Submitted on the record May 4, accused suspended for two years on the effective date of this judgment June 20, 1989

In re Complaint as to the Conduct of

# DAVID L. ARBUCKLE,
*Accused.*

## (OSB 87-72; SC S35946)

775 P2d 832

Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, filed the brief for the Oregon State Bar.

No appearance contra.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar filed a formal complaint against the accused on June 17, 1988, alleging failure to account for client property and failure to cooperate with the Bar authorities. A hearing was held on December 9, 1988. Although personal service of the formal complaint was made on the accused, the accused did not file an answer, appear before the Trial Panel, or otherwise offer a defense. The Trial Panel found the accused in default and proceeded to the determination of the charges. Bar Rule 5.8. The Trial Panel found the accused guilty of both charges. Two members of the Trial Panel decided that the accused should be suspended from the practice of law for one year, and the third was of the opinion that a 35-month suspension was appropriate. The accused filed no brief and did not otherwise appear in this court. We review *de novo* upon the record presented to the Trial Panel. ORS 9.536(3).

## I. DISCIPLINARY RULE VIOLATIONS

In March 1985, one Huston was referred to the accused for legal assistance in upgrading Huston's military discharge from the United States Air Force. Huston delivered to the accused various original military award certificates, newspaper clippings, and other records, including four letters refuting the basis of the discharge received. In June 1985, the accused filed a brief in support of Huston's military discharge upgrade request. For approximately the next two years, Huston repeatedly attempted to obtain the return of his documents from the accused. Numerous telephone calls placed by Huston to the accused were not returned, nor was a response made to a letter sent by Huston to the accused requesting return of the property. Huston enlisted the assistance of both his mother and grandmother, and, eventually, of the American Red Cross in attempts to gain the return of his documents from the accused. According to the testimony, the accused admitted having the documents in his possession and promised immediate return of the documents to Huston.

Huston's initial request to upgrade his military discharge, after a hearing in Denver which Huston attended without his documents, was denied by a military review board in January 1987. According to Huston, the denial was because

the board found a "lack of evidence" in support of the request.[1]

In June 1987, Huston complained to the Bar about the accused's failure to return the documents despite repeated requests. In a letter to the accused dated June 12, 1987, Disciplinary Counsel's office requested a response to Huston's complaint. The accused failed to respond. In July, the complaint was referred to the Local Professional Responsibility Committee (LPRC) for investigation. A lawyer-member of the LPRC was assigned to investigate and made repeated attempts to reach the accused by telephone and two attempts by mail. Telephone messages were not returned, and no response was received to the letters sent.

A Bar disciplinary complaint was filed charging the accused with violating *former* DR 9-102(B)(4) (now DR 9-101(B)(4))[2] and DR 1-103(C) of the Code of Professional Responsibility.

### A. Failure to Return Property.

DR 9-101(B)(4) provides, in part:

"A lawyer shall:

"(4)   Promptly pay or deliver to a client as requested by the client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive."

Based upon clear and convincing evidence, we conclude that the accused violated DR 9-101(B)(4). Unless a lawyer is entitled to, and is exercising, lien rights under ORS 87.430, a client is entitled to the return of the client's property upon demand. *See also* ORS 9.360.[3] Here, the accused has not

---

[1] With the assistance of the American Red Cross, Huston's discharge eventually was upgraded by a civilian review board in June 1988.

[2] Hereafter, we refer to the present version of the Disciplinary Rule because it does not vary substantially in text from the predecessor.

[3] ORS 9.360 provides:

"When an attorney refuses to deliver over money or papers to a person from whom or for whom the attorney has received them in the course of professional employment, the attorney may be required by an order of the court in which a judicial proceeding was prosecuted or defended, or if none were prosecuted or defended, then by an order of the circuit court or judge thereof for the county where such attorney resides or may be found, to do so within a specified time, or show cause why the attorney should not be punished for a contempt."

attempted to justify his failure to return the property by any claim of privilege or right. The documents unquestionably were the property of the client. The accused was required, upon request of Huston, to forward the documents belonging to Huston. This the accused failed to do, in violation of the Disciplinary Rule. *See In re Chandler,* 306 Or 422, 426, 760 P2d 243 (1988).

### B. Failure to Cooperate.

The second cause of complaint concerns the failure of the accused to cooperate with the Bar inquiry. DR 1-103(C) provides:

> "A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

We find by clear and convincing evidence that the accused did not respond fully (or at all) to the inquiries from the Bar authorities empowered to investigate the Huston complaint. The accused has not attempted to justify his omissions by resort to any claim of right or privilege. We therefore conclude that the accused has violated DR 1-103(C).

## II. SANCTION TO BE IMPOSED

For assistance in determining the appropriate sanction, we again refer to the Standards for Imposing Lawyer Sanctions approved by the American Bar Association in 1986 (ABA Standards). *In re Willer,* 303 Or 241, 250, 735 P2d 594 (1987).

### A. Ethical Duties Violated.

By his failures to act, the accused breached duties owed to his client and to the legal profession. ABA Standards 4.0 and 7.0.

### B. Mental State.

In a similar case, *In re Chandler, supra,* the accused informed another lawyer that he would forward the clients'

file to that lawyer. Chandler's clients were involved in a personal injury action, had wearied of Chandler's failure to communicate with them, and had engaged the other lawyer to act as their counsel. Chandler delayed eight months before returning a copy of the file. *In re Chandler, supra,* 306 Or at 424-25. This court concluded that Chandler had "acted or failed to act with 'knowledge' * * *. Knowledge consists in 'the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.'" *Id.* at 428-29 (quoting ABA Standards at 6-7). (Other citation omitted.) The court reached this conclusion because, although Chandler did not consciously attempt to mislead his clients, he "could not have been unaware that his conduct posed difficulties for his clients." *In re Chandler, supra,* 306 Or at 429.

In this case, the accused also acknowledged possession of documents and promised their return. But although Chandler returned the requested documents, the accused here never did. As the court did in *Chandler,* we conclude here that there is insufficient evidence for us to conclude that the accused intended to mislead by his conduct. As in *Chandler,* however, the accused "could not have been unaware that his conduct posed difficulties for his clients"—namely, that his client needed the documents for the upgrade of his military discharge. Accordingly, we conclude that the accused failed to act with the same mental state as did Chandler—knowledge.

We also conclude that the accused acted with knowledge when he violated DR 1-103(C). The accused must have been aware that his conduct did not meet the standard required of a member of the Bar. *See In re Chandler, supra,* 306 Or at 429-30.

### C. Injury.

Although the evidence presented does not allow us to find that the retention of the documents by the accused thwarted Huston's request before the military board, it is apparent that there was injury to the client, measured in terms of time, anxiety, and aggravation, in attempting to coax cooperation from the accused.

### D. Aggravation/Mitigation.

Aggravating factors in this case are a pattern of misconduct, substantial experience in the practice of law (the

accused has been a member of the Bar since 1973), and indifference to making restitution (as of the date of the hearing in this matter, the accused had not returned the documents to the client).

The only mitigating factor present is that the accused has no prior disciplinary record.

### III. CONCLUSION

Remedied immediately, the conduct of the accused could have been a relatively minor violation of the Disciplinary Rules. But the continued failure to honor the legitimate requests of a client, and the stonewalling of the Bar in its pursuit of potential disciplinary violations, will not be taken lightly. Here, the accused not only injured his client, but his conduct also was in "violation of the duty of all lawyers to avoid such conduct as will tend to erode public confidence in the law and in lawyers." *In re Kneeland,* 281 Or 317, 321-22, 574 P2d 324 (1978).

At the hearing before the Trial Panel, the Bar asserted that a one-year suspension would be appropriate in this case. In the Bar's brief before this court, the Bar noted that a more severe sanction would not be inappropriate given the absolute lack of interest shown by the accused toward his client and these disciplinary proceedings. Readiness to accept the obligation to account for one's performance is an important element of professionalism. *In re Geurts,* 290 Or 241, 248, 620 P2d 1373 (1980). The accused's continuing withholding of client property and his failure to appear in these proceedings demonstrate that his inability to accord his conduct with the requirements of the Code of Professional Responsibility is of serious dimension. *See In re Rudie,* 294 Or 740, 746, 662 P2d 321 (1983).

The accused is suspended from the practice of law for a period of two years commencing on the effective date of this judgment. *See* ORAP 11.03. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).