Argued and submitted May 8, accused suspended from the practice of law for 120 days June 27, 1996

## In re Complaint as to the Conduct of

# RONALD K. SCHAFFNER,
*Accused.*

## (OSB 94-72; SC S42986)

918 P2d 803

Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, argued the cause and filed the briefs for the Oregon State Bar.

Ronald K. Schaffner, Portland, argued the cause and filed a brief *in propria persona*.

PER CURIAM

## PER CURIAM

The Oregon State Bar (Bar) charges the accused with professional misconduct arising from the neglect of a case undertaken for two clients. The trial panel found the accused guilty of violations of Disciplinary Rules (DR) 6-101(B)[1] (First Cause of Complaint) and DR 1-103(C)[2] (Second Cause of Complaint). The trial panel also found the accused guilty of a second violation of DR 1-103(C) for failure to appear at the trial panel hearing. The trial panel suspended the accused for two months, to be followed by a 16-month probationary period. The trial panel also required that the accused pay $2,500 "restitution" to his clients in the neglected case.

The Bar petitions for an increase in the length of the suspension from practice imposed on the accused. It also petitions this court to drop any period of probation from the sanction to be imposed. The Bar's petition requests that this court otherwise adopt the trial panel's findings of disciplinary rule violations. The Bar contends that a 60-day suspension is inadequate, given the nature of the accused's conduct. The Bar also argues that the probationary portion of the trial panel's sanction is both "inappropriate and unenforceable."

The accused argues that there is no disciplinary authority to assess restitution or to impose probation, citing Rules of Procedure (BR) 6.1. He also argues that the Bar cannot seek a greater sanction than the one that was proposed by the Bar in the terms of its prehearing offer to stipulate to a resolution of the case. He also contends that a lesser sanction is required in the circumstances presented.

---

[1] DR 6-101 provides:

"(A) A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. .

"(B) A lawyer shall not neglect a legal matter entrusted to the lawyer."

[2] DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

The accused undertook representation of the Hueys, who were defendants in an action. Throughout his representation, the accused failed to return his clients' telephone calls or the calls of the opposing party's lawyer, in a timely manner. In June of 1993, that lawyer called the accused to obtain documentation and to schedule the depositions of the Hueys. The accused failed to respond. The opposing lawyer then gave notice of the depositions of the Hueys for July 28, 1993, a date that was 33 days hence. The accused received the notice by June 30, 1993. The accused failed to inform his clients that their depositions had been scheduled. Neither the accused nor the Hueys attended the deposition. Thereafter, plaintiffs' lawyer filed a motion for sanctions in that action because of the Hueys' failure to comply with the notice of deposition. The accused failed to inform the Hueys of that motion. An arbitration was scheduled later. The accused failed to inform the Hueys of that event.

It may be, as the Bar argues, that the Hueys could have settled their case in June 1993 for less than the amount they later paid to settle the case and that they also incurred additional fees to hire a new lawyer to evaluate the case.[3] The evidence in this record is insufficient to establish an amount that would permit us to find, by clear and convincing evidence, that the Hueys incurred any particular *amount* of damages. But we do find that they were damaged by the accused's inaction.[4]

On February 22, 1994, the Hueys filed a complaint with the Bar. The accused failed to respond to the Bar's two inquiries to him concerning that complaint. The accused later failed to respond to the Local Professional Responsibility Committee investigator's letter. The accused belatedly answered the Bar's inquiries. He also gave his deposition. His deposition was not offered in evidence before the trial panel.

---

[3] So far as we can determine from the record, the accused made no effort to compensate the Hueys. When the Professional Liability Fund requested his files so that it could evaluate the Hueys' claim against the accused, he failed to provide them. The Fund made no payment to the Hueys. The record does not reveal why.

[4] Because of the ruling that we make concerning the sufficiency of the evidence as to the amount of damages, we do not address the broader issue that the accused raises, *viz.*, whether the trial panel may impose restitution at all.

On August 2, 1995, the trial panel notified the accused of the date and time for the disciplinary hearing, after he had confirmed in writing that he was available on the date selected. Negotiations ensued, including a proposed stipulation for settlement.[5] The accused did not indicate acceptance of the offered settlement or agree to a stipulation. The accused failed to attend the hearing or to inform the Bar or the trial panel of his intent to be absent. The trial panel entered its findings of rule violations, as stated above.

The trial panel explained its choice of sanctions as follows:

"The accused's conduct after the filing of the complaint, however, evidences an unwillingness or inability to respond that causes the Panel great concern. Because he chose not to appear, we are unable to determine why he acted as he did or whether he is able to provide reasonably competent services to the public.

"We are, however, convinced that we have a duty to the Bar, the accused, the Hueys and, most importantly, to the accused's current and future clients to fashion sanctions which are based largely upon our unanswered fears.

"In deciding upon sanctions, the Panel has considered that this is the accused's first disciplinary matter. As aggravating factors the panel finds (1) the accused's [sic] refuses or is unable to ack the accused's conduct both before and after the Bar complaint establish a pattern of misconduct, (2) the accused's [sic] refuses or is unable to acknowledge

---

[5] Bar disciplinary counsel's letter of September 15, 1995, proposing such a settlement, stated:

"When you have had a chance to review the enclosed stipulations, please give me a call. I hope it will be possible to reach a stipulation in your case. Barring a stipulated settlement, the Bar will proceed to trial on the *Huey* matter as currently scheduled on October 23, 1995. * * *

"You will recall at your deposition, Bar Counsel John Adlard suggested that it appeared that your practice could use some assistance in case management. That observation, plus the fact that you were apparently going through some medical and emotional difficulties at the time of the neglect in the *Huey* case, suggests that this case might be appropriate for some sort of probation as incorporated in the *In re Gudger* and *In re Van Zeipel* stipulations. You might give that some thought.

"I look forward to hearing from you once you have had a chance to review the enclosed materials. If you have any questions, please give me a call."

his violations of the disciplinary rules, and (3) he has made no offer to make restitution to his former clients.

"The sanctions of the panel are as follows:

"(1)   The accused is suspended from the practice of law for a period of two (2) months.

"(2)   The accused is ordered to make restitution to the Hueys in the amount of $2,500. No interest shall be paid on the amount of restitution.

"(3)   The accused will be on probation for a period of 16-months following his two-month suspension. He shall, as a condition for his continued probation, make restitution payments of at least $200 per month. Such payments shall start 30 days from the accused's reinstatement and be made on the same day of each subsequent month thereafter until the entire amount is paid in full.

"(4)   The accused shall be supervised by an attorney to be appointed by the State Disciplinary Chair during the period of his probation who shall meet with the accused once a month to review the accused's practice."

We turn to resolution of the parties' contentions in this case. Clear and convincing evidence demonstrates that the accused violated both DR 6-101, by neglecting a legal matter entrusted to him, and DR 1-103(C), by failing to respond in a timely manner to inquiries about his clients' complaints to the Bar.

■   The accused's failure to appear at the trial panel hearing does not constitute violation of a disciplinary rule. Indeed, no charge alleging such a violation was brought before the trial panel. The Bar does not argue to this court that the default by the accused violates any disciplinary rule. The Bar argues, however, that the accused's failure to appear at the hearing is an aggravating factor that should increase the length of the suspension sanction.

The accused contends:

"The Bar requested a sixty-day suspension in its Trial Memorandum, and the panel agreed, but added additional conditions. The Bar cannot retroactively ask for greater sanctions than in its Trial Memorandum after the trial panel has given the Bar all it asked for and more. If the Bar

wishes to charge an additional violation of the Disciplinary Rules based on the Accused's failure to appear for trial, it should do so separately.

"Neither probationary supervision nor restitution are permitted sanctions under BR 6.1(a). The Bar concedes this point at page 11 of its Opening Brief. Restitution should be handled through the mechanism of the PLF. The Accused, desiring to make sure that no future illness or depression harms any client, and that he learns every possible lesson from this matter, volunteers to accept a 16-month period of monthly supervision despite the lack of any provision for such in the Rules."

■ Although BR 6.2 uses the word "may," it is wiser that some or all of a period of suspension usually will be reserved as an inducement to complete a period of probation successfully.

■ Although we cannot agree with the accused's contention that probationary supervision is not authorized, we believe that a period of probation is not necessary in this case. The specific authorization for probation is in BR 6.2. Moreover, BR 6.1(a) expressly refers to probation in conjunction with a period of suspension.

■ This court refers to the American Bar Association's *Standards For Imposing Lawyer Sanctions* (1991) (ABA Standards) as providing some useful guidelines for selecting sanctions for lawyer misconduct. Standard 3.0 advises the court to consider the following factors in imposing sanctions:

"(a)   the duty violated;

"(b)   the lawyer's mental state;

"(c)   the actual or potential injury caused by the lawyer's misconduct; and

"(d)   the existence of aggravating or mitigating factors."

Here, the accused violated duties owed to his clients and to the profession. Under duties owed to a client, Standard 4.42 provides:

"Suspension is generally appropriate when:

"(a)   a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

"(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."

Under duties owed the profession, which include communicating in response to disciplinary inquiry, Standard 7.2[6] provides:

"Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system."

■■ During argument, the accused insisted that he was depressed for a long period and could do nothing to respond to his clients' needs or the Bar's inquiries. Letting the clients or the Bar know of the debilitating condition would have taken little time or energy, and the accused has not shown that he was totally disabled at any time. We find that a "knowing" mental state applies to neglect of the clients' case and that an "intentional" mental state applies to failure to answer the Bar's inquiries in a timely manner. As we have said, there was injury to the clients involved even though the amount has not been fixed.

It is clear, before considering factors in aggravation or mitigation, that a suspension is indicated by the ABA Standards as to each of the violations, based on an evaluation of the duty violated, the accused's accompanying mental state, and potential or actual damage.

■ ABA Standards 9.2 and 9.3 define "aggravation" and "mitigation" and list factors that come within each definition.

"9.21 Definition. Aggravation or aggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed."

ABA Standard 9.22 lists aggravating factors, including:

"(c) a pattern of misconduct;

"(d) multiple offenses;

---

[6] Standard 7.0 discusses some examples of these duties. The duty to respond to investigatory inquiries from the Bar is owed to the profession.

"(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

"(g) refusal to acknowledge wrongful nature of conduct;

"(j) indifference to making restitution."

Aggravating factors (c), (d), (e), (g), and (j), apply. There is a pattern of misconduct because of the repeated failures to respond or take action to protect the clients' interests or answer the Bar's continuing inquiries over a considerable space of time. The offenses are multiple. The failures to respond to the Bar's repeated inquiries for a substantial period,[7] unexplained in this record, is intentional and obstructing. The record also shows no acknowledgment of wrongdoing in neglecting the clients' case and discloses the accused's indifference to making any effort to determine the amount or to pay damages for harm to his clients.

The ABA Standards also define and list matters in mitigation, as relevant here as follows:

"9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

"9.32 Factors which may be considered in mitigation. Mitigating factors include:

"(a) absence of a prior disciplinary record;

"(c) personal or emotional problems;

"(h) physical or mental disability or impairment[.]"

Factor (a) applies in mitigation because this is the accused's first disciplinary matter during his professional career. During oral argument the accused also invoked (c) and (h), but no supporting evidence has been placed in the record.

■ The mitigating factors do not outweigh the aggravating factors, even though lack of a prior disciplinary record is a strong mitigating factor.

---

[7] Repeated failures to respond to disciplinary inquiries is a strong aggravating factor. *In re Haws*, 310 Or 741, 751, 754, 801 P2d 818 (1990).

■     Bar counsel relies on *In re Arbuckle*, 308 Or 135, 775 P2d 832 (1989), to support the Bar's position that failure to appear at the trial panel hearing is an aggravating factor. We disagree. *Arbuckle* states:

> "Readiness to accept the obligation to account for one's performance is an important element of professionalism. *In re Geurts*, 290 Or 241, 248, 620 P2d 1373 (1980). The accused's continuing withholding of client property and his failure to appear in *these proceedings* demonstrate that his inability to accord his conduct with the requirements of the Code * * * is of serious dimension." 308 Or at 141 (emphasis added).

The Bar misreads that reference in *Arbuckle* to "these proceedings," although perhaps understandably so. In *Geurts*, upon which the comment in *Arbuckle* rests, the misconduct spoken of was failure to cooperate with the Bar's *investigation*, or to offer any response or explanation at any point, not mere failure to attend the trial panel hearing. No disciplinary rule requires attendance by an accused at the trial panel hearing. We decline to consider the latter as an aggravating factor.

■     The accused's next contention, that the Bar now cannot seek a greater sanction than it sought in documents generated before the hearing, is without merit. An offer to settle by stipulation does not bind either party unless they each accept it. No rule of law limits the Bar to the sanction that it requested in its trial memorandum. We reject the accused's contention and, *de novo*, assess a sanction appropriate to the violations that we have found. A 60-day period of suspension is justified for failure to cooperate with the Bar's investigation, and a 60-day suspension also is appropriate for knowing neglect of his clients' case over a period of time.

The accused is suspended from the practice of law for a period of 120 days commencing on the effective date of this opinion.