Argued and submitted May 10, 2000, accused reprimanded February 14, 2002

In re Complaint as to the Conduct of

# ANDREW P. OSITIS,
*Accused.*

(OSB 97-194; SC S46805)

40 P3d 500

Jay Edwards, Salem, argued the cause and filed the briefs for the accused.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Robert K. Udziela, Portland, filed the brief for *amici curiae* Oregon Consumer League, Fair Housing Counsel of Oregon, Oregon Law Center, Kathryn H. Clarke, Esq., Jeffrey P. Foote, Esq., William A. Gaylord, Esq., Phil Goldsmith, Esq., Maureen Leonard, Esq., and David F. Sugerman, Esq.

Before Carson, Chief Justice, Gillette, Durham, Leeson, and Riggs, Justices.*

PER CURIAM

---

\* Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case; Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case; De Muniz and Balmer, JJ., did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that the accused violated Code of Professional Responsibility Disciplinary Rule (DR) 1-102(A)(1),[1] DR 1-102(A)(3),[2] and ORS 9.527(4)[3] by directing a private investigator to pose as a journalist to interview a party to a potential legal dispute. A trial panel of the Disciplinary Board determined that the accused committed those violations and imposed a 30-day suspension. The accused requested review in this court. BR 10.3. On *de novo* review, BR 10.6, we conclude that the Bar has proved the alleged violations of DR 1-102(A)(1) and DR 1-102(A)(3), but that the appropriate sanction is a public reprimand.

### FACTS

The following facts are supported by clear and convincing evidence. In 1989, the accused represented Hickey, who bought and sold animals for medical research, in proceedings before the United States Department of Agriculture. Hickey's business had been targeted by animal rights

---

[1] DR 1-102(A)(1) provides:

"It is professional misconduct for a lawyer to:

"Violate these disciplinary rules, knowingly assist or induce another to do so, or do so through the acts of another."

[2] DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3] ORS 9.527(4) provides:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"The member is guilty of willful deceit or misconduct in the legal profession."

Under the facts that we find here, the charges against the accused under DR 1-102(A)(3) and ORS 9.527(4) are duplicative. We therefore do not discuss ORS 9.527(4) further in this opinion. *See, e.g., In re Kimmell*, 332 Or 480, 487, 31 P3d 414 (2001) (declining to address alleged statutory violation under analogous circumstances).

activists, and Hickey felt that he was in some personal danger. The accused introduced Hickey to Stevens, a private investigator, who initially was hired to provide security for Hickey and his wife at an October 31, 1989, hearing.

After the hearing, Settlemier, who owned a farm that was directly adjacent to Hickey's business, made negative comments to television news reporters about the business. Her statements later were televised. Hickey and the accused knew Settlemier, and knew that she strongly opposed Hickey's business. Hickey and the accused believed that Settlemier was permitting animal rights activists to use her property as a base of operations for observing and "raiding" Hickey's facilities.

The correct characterization of the decisional process that led to the next step is a matter of considerable dispute. It is undisputed, however, that, on November 7, 1989, Stevens, the private investigator, telephoned Settlemier, introduced himself as a reporter for International News Service, and asked if Settlemier would answer some questions about Hickey's animal research supply business. Stevens' statement that he worked for International News Service technically was true: International News Service was the assumed business name that Stevens used when he worked as a freelance news reporter—a sideline to his private investigating business. It is clear, however, that Stevens was acting as a private investigator, not as a news reporter, when he interviewed Settlemier.

Settlemier agreed to the interview, and Stevens questioned her at length about the factual basis for her comments to news reporters (which had been televised) to the effect that Hickey's business was involved in animal abuse and pet theft. Stevens tape-recorded his conversation with Settlemier without her knowledge or permission. He never informed Settlemier that he was gathering information for Hickey and the accused.

After the interview, Stevens shared what he had learned from Settlemier with the accused. Several years later, Settlemier's tape-recorded statements were used as impeachment evidence in a defamation action that Hickey

brought against her. Settlemier's lawyer later complained to the Bar that the accused had violated his ethical duties by participating in a scheme to obtain information from Settlemier by deceitful means. The present disciplinary proceedings against the accused followed.

In its formal complaint, the Bar alleged that the accused "express[ly had] direct[ed]" Stevens to interview Settlemier in the guise of a news reporter and that, in so doing, the accused had violated the ethical rules and statute cited earlier. In his answer, the accused denied having directed Stevens's actions expressly and also raised affirmative defenses of abuse of procedural due process, violation of equal protection by the Bar's Disciplinary Counsel, and the lack of any clearly established law at the time of the alleged violations. Ultimately, the trial panel rejected those defenses and held that the accused had violated the rules and statute. Although the trial panel did not adopt the Bar's characterization of the accused's involvement, *viz.*, that the accused expressly had directed Stevens to present himself to Settlemier as a reporter, it concluded that the representation was deceitful and that the accused was accountable for it both directly and "vicariously."

## MISREPRESENTATION AND DECEIT

The accused challenges the trial panel's decision on a number of grounds. He argues, first, that the prohibitions on dishonesty, fraud, deceit, and misrepresentation in the disciplinary rules that are at issue do not apply to the kind of deception that was employed in this case. He contends, specifically, that DR 1-102(A)(3) should not be interpreted to apply to misrepresentations made directly or indirectly by a lawyer that go solely to the lawyer's identity and purpose and that are made for the purpose of gathering information from potential adversaries before the institution of a legal action.

The accused's arguments in that regard focus on the same concerns that this court considered in *In re Gatti*, 330 Or 517, 8 P3d 966 (2000). That is, the accused argues that use of this limited sort of misrepresentation is a common and longstanding practice among lawyers, that an exception from the broad disciplinary rule prohibiting misrepresentation is necessary if lawyers are to succeed in discovering and rooting

out wrongful conduct, that legal scholars and courts in other jurisdictions have concluded that such limited deception is not unethical, and that the Bar's enforcement practices strongly suggest that identical conduct by government lawyers is ethical. This court rejected those arguments in *Gatti*, noting that "[f]aithful adherence to the wording of DR 1-102(A)(3) * * *, ORS 9.527(4), and this court's case law does not permit recognition of an exception for *any* lawyer to engage in dishonesty, fraud, deceit, misrepresentation, or false statements." *Id.* at 532 (emphasis in original).

■　The question remains, however, as to whether the conduct at issue falls within the literal terms of the disciplinary rules at issue: The present case turns on an allegation that Stevens misrepresented his identity and purpose by nondisclosure, instead of by affirmative falsehood. We address that topic briefly.

■　In general, the term "misrepresentation" encompasses the nondisclosure of a material fact. Our cases indicate, however, that, in the context of a disciplinary proceeding, the standard of proof for establishing a misrepresentation by nondisclosure is quite high: The Bar must offer clear and convincing evidence that the accused lawyer "knowingly failed to disclose a fact that the accused lawyer had in mind and knew to be material." *In re Huffman*, 331 Or 209, 218, 13 P3d 994 (2000). A misrepresentation is "material," in the disciplinary context, if it "involves information that, if the decision maker had known of it, 'would or could have influenced the decision-making process significantly.'" *In re Benett*, 331 Or 270, 277, 14 P3d 66 (2000) (quoting *In re Gustafson*, 327 Or 636, 649, 968 P2d 367 (1998)). We apply the foregoing principles here.

Stevens's testimony and the accused's own statements establish that, at the time that Stevens and the accused discussed how Stevens would conduct the interview, both men understood the nature of the ruse and that Settlemier would not have agreed to the interview with Stevens if he had disclosed his true purpose. In fact, Stevens did not inform Settlemier at the time of the interview that he worked for, and was gathering information on behalf of,

Hickey or the accused. In short, the evidence clearly and convincingly shows that, at the relevant time, the accused had the undisclosed facts of Stevens's purpose and connection to Hickey in mind and knew that those facts were material to Settlemier's decision to be interviewed. The ruse was a misrepresentation by nondisclosure within the meaning of DR 1-102(A)(3).[4]

The accused argues, however, that, even if certain of Stevens's actions would—if committed by a lawyer—violate DR 1-102(A)(3), the trial panel erred in concluding that any of Stevens's representations to Settlemier can be attributed to him. In that regard, the accused denies that Stevens was working for him when Stevens interviewed Settlemier or that he otherwise controlled Stevens's actions with regard to the interview.

The accused acknowledges that some of his statements to the Bar are to the contrary, but suggests that those earlier statements are excusably inaccurate. The accused now asserts (as he did in his testimony before the trial panel) that Stevens was working directly for Hickey and that, although the accused knew of and "approved" the news reporter ruse beforehand, he had no actual control over Stevens's actions. The accused also denies the significance of the various acts that the trial panel identified as direct participation in the news reporter ruse—that the accused advised Stevens about the legality of the ruse, supplied Settlemier's name and address, suggested areas of inquiry,

---

[4] This court recently approved an amendment to DR 1-102, which adds a new subsection (D). That subsection provides:

"Notwithstanding DR 1-102(A)(1), (A)(3) and (A)(4) and DR 7-102(A)(5), it shall not be professional misconduct for a lawyer to advise clients or others about or to supervise lawful covert activity in the investigation of violations of civil or criminal law or constitutional rights, provided the lawyer's conduct is otherwise in compliance with these disciplinary rules. 'Covert activity,' as used in this rule, means an effort to obtain information on unlawful activity through the use of misrepresentations or other subterfuge. 'Covert activity' may be commenced by a lawyer or involve a lawyer as an advisor or supervisor only when the lawyer in good faith believes there is a reasonable possibility that unlawful activity has taken place, is taking place or will take place in the foreseeable future."

We express no opinion whether the accused's conduct still would violate the rule, as amended.

reviewed the results after the interview, and accepted and forwarded to Hickey the audiotape and Stevens's bill.

In considering the accused's arguments, our initial task is to determine what the disciplinary rules themselves provide respecting circumstances like those alleged in this proceeding. We turn to the disciplinary rules that the accused has been charged with violating: DR 1-102(A)(1), which provides that it is professional misconduct for a lawyer to "violate these disciplinary rules * * * through the acts of another," and DR 1-102(A)(3), which provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

■ By itself, DR 1-102(A)(3) appears to contemplate direct commission of the prohibited acts by the accused lawyer. At the least, it is clear that the lawyer's role in a scheme to misrepresent must be such as to make the overall act of misrepresentation his or her own.

On the other hand, DR 1-102(A)(1), the other rule that is at issue, expands the realm of accountability: It makes lawyers accountable not only if their *own* acts violate the rules, but also if they violate a rule "through the acts of another." DR 1-102(A)(1) thus prevents lawyers from circumventing the disciplinary rules by acting through persons who are not subject to the rules.

■ Applying that construct, we conclude that the evidence clearly and convincingly shows that the accused made misrepresentations to Settlemier "through the acts of another." Our conclusion in that regard does not spring from a finding that the accused hired Stevens to interview Settlemier or in some general sense directed or authorized his use of the International News Service ruse: In fact, the evidence on that subject is mixed, even when the accused's own testimony (which the trial panel found not to be accurate) is excluded from consideration.[5] Our conclusion arises,

---

[5] We state that the trial panel found the accused's testimony not to be accurate, because the trial panel cited the accused's "lack of candor" as an aggravating circumstance. The trial panel noted that the accused had offered inconsistent accounts as to whether he had hired Stevens or had directed or authorized Stevens's activities. However, even if the accused's own testimony that he did not

instead, out of the undisputed fact that the accused suggested a particular line of inquiry to Stevens, knowing that Stevens intended to represent himself to Settlemier as a reporter, not as a private investigator.[6] Even if all of what the accused has suggested is true (*i.e.*, that Stevens ultimately used the ruse on Hickey's authority), we find by clear and convincing evidence that the accused understood Stevens's intentions and attached his own set of directions to the task. Those facts are sufficient to support a finding that the accused exercised direction and control over certain of Stevens's actions, and we so find. That, in turn, is sufficient to support a conclusion that the accused participated in the news reporter ruse and thereby violated DR 1-102(A)(3) "through the acts of another." We so conclude.

## SANCTION

■   Having found that the accused violated DR 1-102(A)(1) and DR 1-102(A)(3), we turn to the question of sanction. Ordinarily, this court refers to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) for guidance in determining the appropriate sanction for lawyer misconduct.

---

hire Stevens or direct his actions is excluded, there is some other evidence that supports the accused's position, *i.e.*, Hickey's testimony that he and Stevens devised the International News Service ruse, and Stevens's daily records, which identify Hickey as the client and Stevens, himself, as the initial proponent of the ruse.

[6] Stevens's Daily Activity Report for the day before the Settlemier interview stated:

"Discussed with [the accused] the idea I have calling Mrs. Settlemier and interviewing her as a[n] International News reporter to see if she would confirm the same points with me that she conveyed to the TV reporters. Liked the idea and authorized follow through. (Immediately). * * * Tape interview if she agrees to it. Specifically asking her about her statements regarding the theft of animals and animal abuse supposedly on the part of the Hickeys. She claims to have actual knowledge of these matters. Pin her down on exactly how she knows this. [The accused] suspects that she is just a trouble maker that is at odds with the Hickeys."

The next day's activity report again refers to the accused's suggestion:

"In brief, the interview confirmed [the accused's] beliefs: that M.S. had NO personal knowledge of ABUSE OF ANIMALS or THEFT OF ANIMALS ON THE PART OF THE HICKEYS."

(Capitalization in original.)

*In re Schaffner*, 323 Or 472, 918 P2d 803 (1996). In accordance with the ABA Standards, we identify an initial, suggested sanction by considering three aspects of the misconduct—the duty violated, the accused's mental state, and the actual or potential injury caused by the misconduct. *In re Devers*, 328 Or 230, 241, 974 P2d 191 (1999). We then identify applicable aggravating and mitigating circumstances and examine relevant case law, to determine whether that tentative sanction should be modified. *Id.*

We do not follow our usual practice in this case, however, because of its similarity on its facts to those presented in *Gatti*. In *Gatti*, we reprimanded the accused. The similarity between the two cases dictates that a reprimand be the presumptive sanction here as well. And, because we find no important distinguishing features that would suggest that a different sanction is required in the present case, we conclude that a reprimand is the appropriate sanction for the accused's conduct. Under the circumstances, an extended discussion of the ABA Standards or the court's methodology in arriving at an appropriate sanction would not benefit the public, the Bar, or bench.

The accused is reprimanded.