Argued and submitted March 4, accused is suspended from the practice of law for one year August 22, 1996

# In re Complaint as to the Conduct of

## PATRICK A. BUTLER,
*Accused.*

## (OSB 94-23; SC S40533)

921 P2d 401

Patrick A. Butler, Portland, argued the cause and filed the briefs *in propria persona*.

Lia Saroyan, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause and filed the brief on behalf of the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.*

PER CURIAM

---

* Unis, J., retired June 30, 1996, and did not participate in this decision.

## PER CURIAM

In this lawyer disciplinary proceeding, the only issue before us is the appropriate sanction for two acts of professional misconduct committed by the accused.

The Oregon State Bar filed a formal complaint against the accused, alleging that he had violated DR 6-101(B) (neglect of a legal matter) and DR 1-102(A)(3) (conduct involving dishonesty) of the Code of Professional Responsibility. At a prehearing conference,[1] the accused stipulated to the allegations in the Bar's complaint. Thereafter, a trial panel of the Disciplinary Board conducted a hearing at which the sole issue was the appropriate sanction. After the hearing, the trial panel ordered that the accused be suspended from the practice of law for three years. However, pursuant to BR 6.2(a), the trial panel stayed all but six months of the suspension and placed the accused on probation, subject to conditions. Among other things, the trial panel ordered that the accused receive mental health diagnosis and treatment, as well as counseling on professional office practice and management.

On review, the Bar urges us to impose a one-year suspension without any conditions or term of probation. The accused argues that the sanction imposed by the trial panel is appropriate and asks that we affirm that sanction. We review *de novo*. ORS 9.536(3); BR 10.1, 10.6. For the reasons that follow, we conclude that the appropriate sanction is a one-year suspension.

The accused stipulated to the following material facts. On December 27, 1990, Fulmer was injured in a motor vehicle accident. Thereafter, Fulmer retained the accused to represent him in a personal injury action against the driver of the other vehicle, Becker. ORS 12.110(1) imposes a two-year period of limitations for personal injury actions.

The accused filed a complaint on Fulmer's behalf three days before the two-year period expired. However, the

---

[1] BR 4.6 authorizes the Disciplinary Board to conduct a prehearing conference between the parties for the purpose of identifying the factual and legal issues in dispute.

accused never perfected service on Becker. In March 1993, the circuit court issued a notice and judgment of dismissal, UTCR 7.020(2), for lack of prosecution. The judgment expressly stated that the court would vacate the judgment if the accused complied with UTCR 7 by filing a return of service within 28 days. However, the accused took no such action. As a result, the court dismissed the case with prejudice.

From time to time, Fulmer asked the accused about the status of the litigation. The accused assured Fulmer that he was working on the case. In actuality, the accused was attempting to find a way to reinstate the action without letting his client discover the dismissal. The accused never informed Fulmer that the court had dismissed the case.

The accused admitted that, by failing to take action to avoid dismissal of Fulmer's case, he violated DR 6-101(B), which provides: "A lawyer shall not neglect a legal matter entrusted to the lawyer." The accused also admitted that, by failing to keep Fulmer apprised of the status of the litigation and by representing to Fulmer that he was working on the case after the court had dismissed it, he violated DR 1-102(A)(3), which provides: "It is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

■ ■ In determining the appropriate sanction, we are guided by the American Bar Association's *Model Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards). *In re Sousa*, 323 Or 137, 145, 915 P2d 408 (1996). Pursuant to those standards, we consider four factors: (1) the nature of the ethical duty violated, (2) the accused's mental state when he committed the violations, (3) the extent of the potential or actual injury caused by the accused's misconduct, and (4) any aggravating or mitigating circumstances. ABA Standard 3.0.

The ABA Standards assume that the most important ethical duties are those that a lawyer owes to a client. ABA Standards at 5. The accused violated his duty to act diligently on his client's behalf by failing to comply with the applicable statute of limitations. ABA Standard 4.4 (duty of diligence). He also violated his duty to be truthful by assuring his client that he was working on the client's case when, in

fact, the accused knew that the court already had dismissed the case. ABA Standard 4.6 (duty of candor).

The ABA Standards define "knowledge" to mean "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 17. The standards define "intent" to mean "the conscious objective or purpose to accomplish a particular result." *Ibid.* We find that the accused acted with "knowledge" in failing to perfect service on Becker and with "intent" in hiding that fact from his client.

The accused's failure to perfect service caused a direct and serious injury to his client, *viz.*, the loss of the client's claim.

We find two aggravating factors. First, the accused had substantial experience in the practice of law when he committed the acts of professional misconduct. ABA Standard 9.22(i). Second, the misconduct occurred at a time when the accused knew that he was under investigation, in an unrelated matter, for violating the same disciplinary rules that are the subject of this proceeding. *See* ABA Standard 9.22(c) and (d) (listing "pattern of misconduct" and "multiple offenses" as aggravating factors). The factual circumstances that gave rise to the earlier disciplinary proceeding are substantially similar to those present here.[2]

---

[2] The charges that were the subject of the earlier proceeding concerned the accused's representation of two clients, the Agners and Gutchow. In 1983, the Agners retained the accused to defend them in an action for breach of contract filed by an equipment leasing company. During the course of the representation, the accused failed to appear at two hearings on the Agners' behalf, failed to respond to motions filed by the leasing company, failed to file an undertaking on appeal, and practiced law in a jurisdiction where he was not licensed. The Agners suffered monetary damages as a result of the accused's misconduct. In 1988, Gutchow retained the accused to represent him in a personal injury action. The accused failed to file a proof of service with the complaint and, as a result, the case was dismissed. In November 1992, the Bar notified the accused that it had commenced a formal disciplinary proceeding against him, charging him with violating DR 1-102(A)(3), DR 6-101(A), and (B), and DR 3-101(B) in representing the Agners, and DR 6-101(B) in representing Gutchow. In 1993, this court approved a stipulation for discipline suspending the accused from the practice of law for 90 days as a result of the Agners and Gutchow matters.

■     The only mitigating factor that the trial panel found was that the accused "is having personal problems." ABA Standard 9.32(c) (listing "personal or emotional problems" as a mitigating factor). The trial panel noted, however, that "[w]hen pressed on this issue the Accused was very vague about the full nature of those problems and the extent to which he is making personal efforts to remedy them." Our review of the record discloses that, although the accused made vague references to marital difficulties and personal problems related thereto, he has not demonstrated to our satisfaction that personal or emotional problems contributed to his acts of professional misconduct. We therefore decline to consider the personal problems of the accused as a mitigating factor. We find no other mitigating factors present.

    We now turn to the proper sanction. The ABA Standards provide that suspension generally is appropriate when "a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client" or when "a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." ABA Standard 4.42. The accused's effort to mislead his client regarding the status of the legal matter aggravates his misconduct. The penalty for conduct involving dishonesty, when coupled with other misconduct, can range from suspension to disbarment. *See Sousa*, 323 Or at 147 (disbarment for neglecting a legal matter, misleading client, collecting an excessive fee, and failing to cooperate with a Bar investigation); *In re Porter*, 320 Or 692, 890 P2d 1377 (1995) (63-day suspension for dishonest conduct toward another lawyer, coupled with other violations in a pattern of misconduct). We conclude that a suspension is the appropriate sanction here.

■     Before addressing the issue of the length of the suspension, we consider whether the sanction should include a term of probation. As noted, the trial panel ordered that the accused be suspended from the practice of law for three years but stayed all but six months of the suspension subject to various probationary conditions. This court previously has said that a condition of probation should be imposed only when some correlation exists between the ethical violations and the probationary conditions. For example, in *In re Haws*, 310 Or 741, 751-52, 801 P2d 818 (1990), this court reviewed a trial

panel's decision to require the accused, as a condition of probation, to receive professional office practice and management counseling, take the Multistate Professional Responsibility Examination, and complete a course in stress management. The court noted that the panel apparently had "attempted to fashion conditions of probation that would address certain troublesome practices of the accused." *Id.* at 752. The court stated:

"Though the actions of the Trial Panel are understandable, perhaps laudable, the Trial Panel's probationary conditions do not track the charges of which they found the accused guilty, and, at least in part, are inappropriate. *See In re Hereford*, 306 Or 69, 76, 756 P2d 30 (1988). The conditions of probation are withdrawn." *Ibid.*

Here, the trial panel required, as a condition of the accused's probation, that he be diagnosed by a mental health care provider and, if recommended by the provider, undergo mental health treatment. That condition stemmed from the trial panel's belief that "the Accused suffers from serious personal problems that he is not addressing." The trial panel also required the accused to receive counseling on professional office practice and management.

■ As in *Haws*, we do not find a sufficient correlation between the acts of misconduct committed by the accused and the probationary conditions imposed by the trial panel that the accused urges us to adopt. The record does not persuade us that a mental health condition or simple carelessness in office management caused the accused to engage in the misconduct shown here. We believe that a lengthy suspension will provide greater protection to the public. If the accused believes that treatment and counseling will reform his behavior, he can demonstrate that fact in connection with his application to resume active law practice following a suspension. BR 8.1(a)(iv) (stating requirement of formal application for reinstatement).[3]

---

[3] Under BR 8.1(a)(iv), the accused will be required to submit a formal application before being considered for reinstatement to the Bar. As part of the formal application, the accused must demonstrate his "general fitness to practice law and that the resumption of the practice of law in this state * * * will not be detrimental to the administration of justice or the public interest." BR 8.1(b). Should the accused decide to apply for readmission to the Bar, any decision to obtain a mental

We turn to the issue of the appropriate length of suspension. We weigh heavily the fact that the accused has engaged in a pattern of similar misconduct, spanning about 10 years and involving three separate clients. The accused continued his professional misconduct after the Bar had notified him that it had commenced a formal disciplinary proceeding, involving the Agners and Gutchow matters, charging him with violations of the same disciplinary rules as those that are the subject of this proceeding.

In *In re Chandler*, 306 Or 422, 432, 760 P2d 243 (1988), this court attached significance to the fact that a lawyer continued to commit ethical transgressions after the Bar had initiated formal disciplinary proceedings against him. This court suspended the lawyer for two years for neglecting a legal matter entrusted to him, failing to turn over a client's file, failing to respond fully to inquiries from the Bar, and failing to cooperate with the State Lawyers Assistance Committee. *Ibid.*

Although the accused's misconduct is serious, it is less serious than that considered in two cases that involve somewhat similar facts, *Chandler* and *Sousa*. We conclude that a one-year suspension from the practice of law is an appropriate sanction for the accused's misconduct.

The accused is suspended from the practice of law for a period of one year commencing on the effective date of this decision.

---

health diagnosis and treatment or to receive professional office practice and management counseling during the period of suspension would be relevant to the showing that the accused must make to gain readmission. *See In re Purvis*, 306 Or 522, 525, 760 P2d 254 (1988) (in lieu of probationary conditions, court ordered the accused to satisfy the formal application requirements of BR 8.1 prior to reinstatement). We also note that BR 6.2(b) authorizes the Bar to impose probationary terms as a condition of reinstatement.