Argued and submitted February 23; respondent suspended from practice of law for period of 120 days, commencing 60 days from date of this decision March 24, 2022

In re Complaint as to the Conduct of

DAVID J. KELLER,
OSB No. 045136,
*Respondent.*

(OSB 1989) (SC S068805)

506 P3d 1101

The Oregon State Bar brought a disciplinary action against respondent, alleging violations of the Oregon Rules of Professional Conduct (RPC) arising out of his neglect of a legal matter, his misrepresentations to a client, and his failure to respond to lawful demands for information from a disciplinary authority. A trial panel of the Disciplinary Board found that that misconduct violated RPC 1.3, RPC 8.4(a)(3), and RPC 8.1(a)(2), and it suspended him for a period of 120 days. *Held*: On *de novo* review, the court concluded that there was clear and convincing evidence that respondent committed all of the charged violations of the disciplinary rules and that respondent should be suspended from the practice of law for a period of 120 days.

Respondent is suspended from the practice of law for 120 days, commencing 60 days from the date of this decision.

En Banc

On review of the decision of a trial panel of the Disciplinary Board.

David J. Keller, Portland, argued the cause and filed the brief on behalf of respondent.

Susan R. Cournoyer, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the briefs on behalf of the Oregon State Bar.

PER CURIAM

Respondent is suspended from the practice of law for a period of 120 days, commencing 60 days from the date of this decision.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that, in connection with a single legal matter, respondent had violated three provisions of the Oregon Rules of Professional Conduct (RPC): RPC 1.3 (prohibiting a lawyer from neglecting a legal matter entrusted to the lawyer), RPC 8.4(a)(3) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer's fitness to practice law), and RPC 8.1(a)(2) (requiring lawyers to respond to lawful demands for information from a disciplinary authority). Respondent concedes all the facts found by the trial panel of the Disciplinary Board in support of those allegations; he further concedes that he committed each of the alleged violations. Respondent asserts, however, that the trial panel erred in suspending him for 120 days, because, in his view, it failed to adequately consider the minimal actual or potential harm to the client and failed to properly consider, in mitigation, his mental state, which, he asserts, was genuinely remorseful. For the reasons that follow, we agree with the trial panel that respondent committed the charged violations of the disciplinary rules and that a suspension of 120 days is an appropriate sanction for that misconduct.

## FACTUAL BACKGROUND

We review decisions of the trial panel *de novo*. ORS 9.536(2); Bar Rule of Procedure (BR) 10.6. We find the following facts by clear and convincing evidence. BR 5.2 (Bar has burden of establishing alleged misconduct by clear and convincing evidence).

Respondent was admitted to the Oregon State Bar in 2004. From 2016 to 2017, respondent represented his client, Carmen Vallejos, in a claim against her deceased husband's estate. In November 2017, respondent negotiated a settlement of that claim in which Vallejos was to receive $350,000 and clear title to a minivan that she had used during the marriage. The settlement agreement provided that Vallejos would receive the funds and the title within ten days of full execution of the agreement. The personal representative of the estate, who was the sister of Vallejos's

deceased husband, released the funds and signed the mini-van's title over to Vallejos within 10 days as agreed, but she inadvertently signed the title in the wrong box. Respondent immediately recognized the problem and informed Vallejos, and Vallejos asked him for help in correcting that mistake.

For eight months after respondent's discovery of the mistake, he failed to take any action to obtain clear title for Vallejos as she had requested. Respondent finally sent the incorrectly signed title to the personal representative's lawyer, asking to have the document re-signed correctly, in July 2018. When the personal representative's lawyer received the title, he promptly had the personal representative sign it, and he returned it to respondent on August 3, 2018. Vallejos received the corrected title on August 10, 2018.

Meanwhile, in January 2018, Vallejos had asked respondent for an update on the title. Respondent emailed her and falsely told her that he had sent the title to the personal representative's lawyer for signature. From February to June 2018, Vallejos repeatedly sought updates about the title, and respondent repeatedly (and falsely) told her that he was working on it and suggested that the title was still at the office of the personal representative's lawyer. On June 11, respondent falsely told Vallejos that he had made contact with the lawyer and that the lawyer had promised to send the corrected title to him in one week. On July 2, respondent emailed Vallejos and told her (falsely) that the title was signed and had been mailed to his office. He repeated that lie in phone calls during the week of July 9 to 16, attributing the delay to a new mail carrier. As noted, Vallejos eventually received the corrected title on August 10.

As Vallejos later testified, she became anxious about the delay because she believed that her husband's family was not cooperating in the transfer of the title, and she was worried that it was because they were upset with her. She further testified that, during the period after the settlement agreement was reached and before she received the clear title, the minivan began to have mechanical problems that made it unsafe to drive, but, without the title, she was unable to sell it or trade it in.

After Vallejos received the title, she filed a grievance with the Bar's client assistance office. Respondent did not cooperate with the Bar's investigation and, specifically, did not respond to most of the Disciplinary Counsel's Office's (DCO's) questions. When the DCO lawyer followed up with him, he initially ignored her. On August 21, 2019, the Bar administratively suspended respondent for failure to cooperate. Within minutes of receiving notice of the suspension, respondent filed a brief response. However, after the administrative suspension was lifted, respondent continued to delay responding to the Bar, providing incomplete answers to the Bar's inquiries, and, when the Bar sought follow-up information in December 2019, respondent again ignored the Bar's inquiries.

Respondent eventually provided a late response in February 2020. The Bar sent respondent a request for production of documents in September 2020 and sent him six follow-up emails over the next few months. Respondent produced the requested documents only after the Bar sought and obtained an order compelling production of documents. Respondent did not file a response to the motion to compel, and he has never offered an explanation for his failure to comply with the Bar's discovery requests.

As a result of that course of conduct, the Bar, as noted above, charged respondent with neglect of a client matter, RPC 1.3, misrepresentation, RPC 8.4(a)(3), and failing to respond to the Bar's inquiries, RPC 8.1(a)(2).

## THE TRIAL PANEL DECISION

After a hearing, the trial panel found that respondent had committed all of the charged violations.[1] After finding that respondent's mental state in committing those violations was knowing[2] and that respondent caused actual injury to his client and to the reputation of the profession, the trial panel determined that the presumptive sanction for

---

[1] At the hearing, respondent did not present a case on his own behalf; he admitted that the Bar's version of the facts was accurate.

[2] The trial panel stated that respondent might have been merely negligent when he initially neglected the client matter, but, over time, his negligence became knowing misconduct.

engaging in that conduct is suspension. The trial panel then turned to the aggravating and mitigating factors. It found the following aggravating factors to be present in this case: a dishonest or selfish motive, American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards), ABA Standard 9.22(b); a pattern of misconduct, ABA Standard 9.22(c); multiple offenses, ABA Standard 9.22(d); and substantial experience in the practice of law, ABA Standard 9.22(i). In mitigation, the trial panel found that respondent did not have a prior disciplinary record, ABA Standard 9.32(a). It gave little weight to respondent's argument that his remorse also was a mitigating factor, ABA Standard 9.32(l). With respect to that factor, the trial panel observed that respondent had not taken the opportunity presented at the hearing to directly address Vallejos and let her know that he felt remorseful. Moreover, the trial panel found, it was unclear whether respondent felt sincere remorse or merely regret that he had put himself in a difficult position. For those reasons, the trial panel stated, "we cannot give this mitigating factor significant weight."

Turning to case law, the trial panel considered *In re Schaffner*, 323 Or 472, 481, 918 P2d 803 (1996) (lawyer suspended for 120 days—60 days for neglect and failing to keep clients informed, and 60 days for failing to cooperate with the disciplinary investigation), and *In re Redden*, 342 Or 393, 395, 153 P3d 113 (2007) (in absence of other misconduct, 60-day suspension for neglecting a legal matter for two months was appropriate), and determined that a suspension of 120 days was an appropriate sanction for respondent's misconduct in this case. The trial panel acknowledged that the Bar had recommended a 90-day suspension. In explaining its decision not to accept the Bar's recommendation, the trial panel stated that, although it recognized that a 90-day suspension would be within the range of sanctions imposed in similar cases, it was nevertheless appropriate in this case to impose a longer suspension. That was so, the trial panel explained, because respondent's misconduct undermined his client's trust in the legal process, and because respondent engaged in an active effort to cover up his initial misconduct by lying to her, as well as an effort to thwart the

investigatory process by failing to answer the Bar's inquiries and comply with the Bar's discovery requests.

## ANALYSIS

In his brief to this court, respondent admits that he committed the charged offenses. He argues only that a sanction less than a 120-day suspension is appropriate in his case. He continues to argue, as he did below, that the actual harm that his misconduct caused his client was relatively insignificant and that, in his view, the trial panel erred in failing to give sufficient weight to his remorse as a mitigating factor.

On *de novo* review, we find by clear and convincing evidence that respondent committed all three of the charged violations. That is, we find by clear and convincing evidence that respondent neglected a legal matter in violation of RPC 1.3 when, for eight months, he failed to take any action to obtain clear title for his client's vehicle. We also find by clear and convincing evidence that respondent misrepresented facts in violation of RPC 8.4(a)(3) when he repeatedly and falsely told her that he had contacted opposing counsel, that the corrected title had been mailed to his office, and that the reason for the delay was a problem with the postal service. Finally, we find by clear and convincing evidence that respondent failed to respond to the Bar's lawful requests for information, in violation of RPC 8.1(a)(2), when, over the course of several months, he provided incomplete responses to the Bar's inquiries and failed to respond to the Bar's discovery requests for no apparent reason.

We turn to the appropriate sanction for those violations. When determining the appropriate sanction for disciplinary violations, we refer to the ABA Standards and Oregon case law. *In re Long*, 368 Or 452, 473, 491 P3d 783 (2021). Applying the ABA Standards, the court first considers the ethical duty violated, the respondent's mental state at the time of the misconduct, and the potential or actual injury caused by that misconduct. ABA Standard 3.0; *Long*, 368 Or at 473. Collectively, those factors inform our determination of the preliminary, or presumptive, sanction. *See* ABA Standard 4.0 (setting forth sanctions that are generally

appropriate absent aggravating or mitigating circumstances). With the presumptive sanction in mind, we then consider the presence of aggravating or mitigating circumstances that may justify either an increase or a decrease in that sanction. *Long*, 368 Or at 473. Finally, we consider the appropriate sanction in light of this court's case law. *Id*.

First considering the duties violated, we find that respondent violated the duty he owed to his client to act with reasonable diligence and promptness in representing her, as well as his duty to act with candor. ABA Standard 4.4 (duty to act with diligence and promptness); ABA Standard 4.6 (duty to act with candor). Respondent also violated the duty he owed as a professional to cooperate with his regulators. ABA Standard 7.0.

As for respondent's mental state, we find, as did the trial panel, that respondent acted at least knowingly with respect to each of his violations. A lawyer acts knowingly when the lawyer acts with a "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. During the eight months in which respondent failed to act to address the title error, Vallejos repeatedly contacted him for information, but respondent did not act on her requests and repeatedly lied to her about the status of the title. Thus, he was consciously aware that he was neglecting a legal matter and that his representations about its status were false. Moreover, respondent does not dispute that he received the Bar's inquiries and discovery requests or that he was aware of his obligations to comply. Respondent therefore acted at least knowingly when he failed to provide complete answers to the Bar's inquiries and comply with the Bar's discovery request.

With respect to the harm caused by his misconduct, respondent acknowledges that he caused Vallejos uncertainty, anxiety, and aggravation at the situation. However, he stresses that Vallejos's name was on the title, she was in full possession of the vehicle during the entire eight-month period, and that the monetary loss to her from the delay in providing her the corrected title was minimal.

Uncertainty, anxiety, and aggravation are actual injuries for purposes of our sanction analysis. *In re Obert*, 352 Or 231, 260, 282 P3d 825 (2012) (*Obert II*); *In re Snyder*, 348 Or 307, 321, 232 P3d 952 (2010). To the extent that respondent is suggesting that Vallejos's injuries could have been worse than they actually were, that does not help his cause, as the court may also take into consideration potential injury. ABA Standard 3.0 (in imposing sanction, court should consider actual and potential injury). Under the ABA Standards, "potential injury" is "the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." ABA Standards at 7. As Vallejos testified before the trial panel, during the period after the settlement agreement was reached and before she received the clear title, the minivan began to have mechanical problems, making it unsafe to drive, but she could not sell it or trade it in without the title. If the minivan had actually become inoperable during that time, the fact that she did not have clear title to the vehicle might well have created serious problems for her.

Respondent's arguments also overlook that his entire course of conduct, not just his failure to address the title issue, caused actual harms. As the trial panel noted, respondent's misconduct directly undermined his client's trust in the legal process, which the ABA Standards recognize as actual injury. ABA Standards at 7 (defining "injury," in part, as "harm to *** the profession"). Respondent also caused actual injury to the lawyer discipline process when he failed to respond candidly during the investigation, because the proceeding was needlessly drawn out and the Bar was forced to seek an order compelling production of documents. *In re Nisley*, 365 Or 793, 815, 453 P3d 529 (2019) (lawyer caused injury to the profession when he was not forthcoming in his responses to Bar's inquiries and Bar was required to take other measures to obtain the necessary information).

Given the duties that respondent violated, his accompanying mental state, and the actual or potential harms resulting from his misconduct, the presumptive

sanction in this case is suspension of respondent's bar privileges. As noted, we look to the ABA Standards to determine the presumptively appropriate sanction. Suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or engages in a pattern of neglect and causes injury or potential injury to a client. ABA Standard 4.42. Suspension is also appropriate when a lawyer knowingly deceives a client and causes injury or potential injury to the client. ABA Standard 4.62. Finally, suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system. ABA Standard 7.2.

With that presumptive sanction in mind, we turn to whether aggravating or mitigating factors are present. Respondent does not dispute the trial panel's finding that the following aggravating factors are present in this case: Respondent had a dishonest or selfish motive, ABA Standard 9.22(b); there was a pattern of misconduct, ABA Standard 9.22(c); respondent committed multiple offenses, ABA Standard 9.22(d); and respondent has substantial experience in the practice of law, ABA Standard 9.22(i). We likewise find that those aggravating factors are present.

With respect to mitigating factors, the trial panel found, and we agree, that respondent's lack of a prior disciplinary record is a mitigating factor. Respondent also argues that his remorse was a mitigating factor. As noted, the trial panel gave that factor little weight, finding that it was significant that respondent had not taken the opportunity to express his remorse directly to Vallejos during the hearing. Respondent asserts that the trial panel erred in discounting his remorse as a mitigating factor, in part, because he did not have an adequate opportunity at the hearing to convey his remorse directly to his former client, and further because his own testimony shows that he was remorseful.

In addressing that argument, we first observe that, because respondent sought to rely on remorse as a mitigating factor, respondent must bear the consequence if the evidence in support of that factor falls short. *See In re Devers*,

328 Or 230, 245, 974 P2d 191 (1999) (explaining that the accused's belated cooperation with Bar inquiry was not a "sufficiently weighty" mitigating factor to warrant deviation from presumptive sanction); *cf. In re Davenport*, 334 Or 298, 321, 49 P3d 91, *modified on recons*, 335 Or 67 (2002) (to rely on *aggravating* factor under ABA standards, the *Bar* must point to evidence to support factor (citing *Devers*, 328 Or at 243)).[3]

Given the evidence of remorse that respondent did offer, we, like the trial panel, are not persuaded that it warrants significant weight. As the trial panel explained, it is difficult to determine whether the remorse that respondent expressed was genuinely for the harm that he had caused his client or, instead, for the circumstances in which he now found himself. At a minimum, respondent's limited expressions of remorse indicate to us that he has not internalized all of the harms that his misconduct had caused, not only to his client, but also to the Bar and the legal profession as a whole. *See Devers*, 328 Or at 245 (noting the accused's failure to recognize the actual injury that his conduct had caused the legal profession). Thus, even assuming that, given the opportunity, respondent would have expressed remorse directly to his client, we are not persuaded that the mitigating factors in this case outweigh the aggravating factors. As a result, the presumptive sanction of suspension is appropriate. We therefore now turn to the question at the core of respondent's challenge—what *length* of suspension is appropriate?

To determine the appropriate suspension length, we turn to this court's case law. Here the cases support a suspension of at least 120 days. We have suspended lawyers for 60 days for neglect alone, even in cases where, unlike this case, the aggravating and mitigating factors were in equipoise or where there were mitigating factors and no

---

[3] Although this court has not expressly assigned burdens of proof with regard to evidence in support of aggravating or mitigating factors under the ABA Standards, some courts, unsurprisingly, have assigned them to the party seeking to rely on them as bases to depart from the presumptive sanction. *E.g., In re Trejo*, 163 Wash 2d 701, 730, 185 P3d 1160, 1174-75 (2008) (accused bore "burden of proof as to whether there was an absence of dishonest or selfish motive," ABA Standard 9.32(b)).

aggravating factors. *In re LaBahn*, 335 Or 357, 364-67, 67 P3d 381 (2003) (aggravating and mitigating factors in equipoise); *In re Redden*, 342 Or 393, 401-02, 153 P3d 113 (2007) (three mitigating factors and no aggravating factors).

Where the lawyer's neglect of a client was knowing and it was accompanied by other violations, this court has imposed lengthier suspensions. For instance, in *In re Butler*, 324 Or 69, 921 P2d 401 (1996), the court suspended a lawyer for a year for neglect of a client matter, which had resulted in dismissal of the client's case, and for making false representations to the client. In that case, the lawyer had filed a complaint for his client, but the action had been dismissed with prejudice for failure to serve the defendant. The lawyer failed to inform his client of the dismissal and then gave false assurances to the client that he was working on the case, when, in fact, he was looking for a way to reinstate the action without informing the client of the dismissal. *Id.* at 71-72. The sanction in that case was aggravated by a pattern of similar misconduct and by the fact that the lawyer had substantial experience in the practice of law; no mitigating factors were present. *Id.* at 73-74. To be sure, the lawyer in *Butler* engaged in conduct that was both more aggravated and more harmful than the conduct in respondent's case, but that lawyer also received a suspension more than three times as long as the 120 days imposed in this case.

As another example, this court imposed a 120-day suspension for a lawyer whose only violation was her failure to respond to lawful requests for information from the Bar and the Local Professional Responsibility Committee. *In re Miles*, 324 Or 218, 923 P2d 1219 (1996). And when a violation of that kind is present alongside other knowing violations of the disciplinary rules, the court has imposed suspensions of 120 days or longer. For example, in *Schaffner*, cited by the trial panel, the court imposed a 120-day suspension for the lawyer's knowing neglect of a client matter and failure to cooperate with the Bar's investigation. 323 Or 472. In that case, the court stated that "a 60-day period of suspension is justified for failure to cooperate with the Bar's investigation, and a[nother] 60-day suspension also is appropriate for knowing neglect of his clients' case." *Id.* at 481. Finally, in *Obert II*, the court suspended a lawyer for six months for,

in one matter, knowingly collecting an excessive fee and failing to respond to a lawful demand for information from a disciplinary authority, and, in another matter, failing to provide competent representation by filing untimely post-trial motions and notices of appeal. 352 Or 231.

Respondent's misconduct is much like that of the lawyer in *Schaffner*, which suggests that a suspension of 120 days is appropriate in this case. In arguing for a shorter suspension, respondent cites *In re Obert*, 336 Or 640, 89 P3d 1173 (2004) (*Obert I*), in which this court determined that a suspension of 30 days was appropriate when the attorney had negligently neglected one legal matter, negligently failed, in a second matter, to file a notice of appeal (and then knowingly waited five months to inform the client of that fact), and, in a third matter, negligently failed to return a client's file. *Obert I* is distinguishable, however. In *Obert I*, the lawyer's misconduct was, in most respects, negligent rather than knowing. Moreover, although the court found several aggravating factors, it found no evidence that the lawyer had acted with disregard for professional responsibility or that the lawyer had acted with a dishonest intent. 336 Or at 654-55. Also, the court found several mitigating factors not present in this case, including that the lawyer had a reputation for good character among his colleagues, had made restitution when he could, and had cooperated fully with the Bar and the Disciplinary Board. *Id*.

To summarize, we conclude that respondent committed all of the charged violations of the disciplinary rules, that he acted knowingly, and that his conduct resulted in actual damage. Upon considering the duties respondent violated, his mental state, the resulting injuries, and this court's case law, we conclude that a suspension of 120 days is an appropriate sanction for respondent's misconduct.

Respondent is suspended from the practice of law for a period of 120 days, commencing 60 days from the date of this decision.